HAND *against* FIELDING.

Where a note is given in payment of an article purchased, evidence that the article was of no value, and that this fact was fraudulently concealed by the plaintiff, is admissible to impeach the consideration of the note.

ASSUMPSIT, on a promissory note, against the defendant, as maker.

Plea, non-assumpsit.

The note had been given on the purchase of a certain quantity of *sumach*, from the plaintiff, by the defendant, who was a tanner.

The defendant's counsel offered to prove that the sumach had copperas mixed with it, which rendered it of no value, and that this fact was known to the plaintiff at the time of sale, and fraudulently concealed from the defendant.

This testimony was objected to, on the part of the plaintiff, on two grounds:—

1. That the note concluded the defendant from an inquiry of this nature into the original consideration; and

Hand v. Fielding.

2. That if the inquiry was admissible at all, the defendant could not go into it under his plea of non-assumpsit; he ought to have given a special notice.

THOMPSON, J.   The defendant offers to show an imposition, a direct fraud on the part of the plaintiff; it is competent for him to give this in evidence, to show that the contract was void *ab initio*, there being in fact no consideration for it.   The evidence, too, is certainly admissible under the plea of non-assumpsit; it proves that, in law, he never did promise.   Vide *Acc. Sill.* v. *Rood*, 15 Johns. 231.

The witnesses, on the part of the defendant, proved that the sumach was mixed with copperas; that the plaintiff knew the fact at the time of sale, and did not disclose it; that, to a tanner, it was of no manner of value, inasmuch as it destroyed the texture of the leather, to which it was applied; that it might be of use to dyers, and was, on that account, worth about half price.

THOMPSON, J.   You have failed in your defence; you have not made out fraud in the sale: to have shown the want of consideration here, you ought to have proved that the sumach was of no value whatever.   You must resort to your action against the vendor.(3)

Verdict for the plaintiff.

*Talbot*, for the plaintiff.

*Wilkins*, for the defendant.

(3) So in the case of *Morgan* v. *Richardson*, reported in a note to the case of *Farnsworth* v. *Garrard*, (1 Campbell, 40,) the action was against the ac-

ceptor of a bill of exchange, at the suit of the drawer, the bill being payable to his own order; defence, that the bill had been accepted for the price of some hams bought by the defendant, from the plaintiff, to be sent to the East Indies; and that the hams had turned out so very bad, that they were almost quite unmarketable. The sum, for which they actually sold, was paid into court. Lord Ellenborough held, that though where the consideration of a bill of exchange fails entirely, this will be a sufficient defence to an action upon it by the original party, it is no defence to such action, that the consideration fails partially; but that, under such circumstances, the giver of the bill must take his remedy by action, against the person to whom it was given.

The same rule was adopted in the case of *Tye* v. *Gwinne*, 2 Camp. 346. That was also an action by the drawer and payee, against the acceptor. The defendant offered to prove, in mitigation, that the bill had been accepted for the price of a quantity of cheese, sold by the plaintiff to the defendant for exportation. That the cheese was of a bad quality and improperly packed, and that the consideration for the acceptance had, in great measure, failed. But Lord Ellenborough overruled the defence, and declared his determination to adhere to the judgment of the court in the case of *Morgan* v. *Richards.* In *Frisbee* v. *Hoffnagle*, (11 Johns. 50.) the same rule is adopted, and the two cases above stated, cited in support of it. In this case, the plaintiff sued as payee of a promissory note, made by defendants to secure the purchase money of a certain piece of land, conveyed to the defendant by the plaintiff, by a deed with warranty. It appeared by way of defence, that at the time of the conveyance, a judgment had been rendered against the plaintiff, and the land, so conveyed, was, after the making of the promissory note, seized by virtue of an execution on that judgment, and sold by the sheriff. The judge, at *Nisi Prius*, being of opinion that the consideration had totally failed, nonsuited the plaintiff, and the court confirmed his decision. So also in *Greenleaf* v. *Cook*, the same rule was adopted by the supreme court of the United States, 2 Wheat. 13. In the principal case in the text, such a fraud as would avoid the sale, was not made out, the defendant being acquainted with the article, purchased on his own judgment, without warranty, and no deception was practiced, to induce him to believe that the sumach was free from copperas, and no art was used to disguise it. The case, therefore, under the testimony offered, was one merely of partial failure of consideration, in which the party is driven to his cross action. If fraud had been fully made out, it would have been a bar.

Thus in *Fleming* v. *Simpson*, (1 Camp. 40, n.) which was an action by the indorsee against the acceptor of a bill, given for the amount of a pipe of best London particular Madeira, which the defendant had ordered of the drawers. The defence was, that the wine was of bad quality, and could not have been

best London particular Madeira when shipped, and that the indorsee was a partner in the house of the shippers. Lord Ellenborough held, that if it was a clear fraud in the shippers, and the plaintiff was a partner in the house, he could not recover, but that the defence was not sufficient, if the commodity shipped was only of inferior quality to that ordered. So in *Solomon* v. *Turner*, (1 Starkie, 51,) which was an action on a promissory note, by payee against maker. The defendant offered to prove that certain pictures had been sold to defendant, by the plaintiff, who was a dealer in pictures, at prices infinitely exceeding their real value, and that the note, in question, had been given as security for the price of one of them, and that the plaintiff, at the time of the sale, knew the pictures were of little value. Lord Ellenborough decided, that the testimony was inadmissible for the purpose of reducing the damages, by showing that the pictures were of inferior value, but that if the defendant could, by the inadequacy of the value, and other circumstances, prove fraud on the part of the plaintiff, so as to show that there was no contract at all, the evidence would be admissible, but that it would be inadmissible if it fell short of that.

It might be inferred, from the loose language of some learned commentators, that this rule had been shaken or overthrown by more recent cases. Story on Bills, sec. 187. But this is not so; it has, on the contrary, been pretty uniformly upheld. Chitty on Bills, 86; *Obbard* v. *Betham*, Mood. & Malk. 483; *Frisbie* v. *Hoffnagle*, 11 Johns. 50; and *Batterman* v. *Pierce*, 3 Hill. 171. A new doctrine, however, lately engrafted upon it, has modified and controlled its application to a great extent.

The annotator to the eighth edition of Chitty on Bills, remarks, with judgment, as follows: "It is submitted that it would be more consistent with justice in practice to extend rather than narrow the just and equitable right to deduct or reduce a part of the claim on a bill or a note, at least when arising in the same transaction, rather than to compel a defendant to pay the whole amount, and then in a cross action, as for unliquidated damages, to endeavor to recover back a part of the money he has thus parted with, perhaps to a person who, in the mean time, may have become insolvent. The trouble and inconveniences resulting from the investigation of the amount of damages, would not be greater in an action upon the bill than in a cross action, which only tends to an increase of costs and frequent loss. Chitty, 89, Not. W.

I think it will be found that *Reab* v. *McAllister*, (8 Wend. 109,) and *Batterman* v. *Pierce*, (3 Hill. 172,) have introduced in this particular, by the application of the right of *recoupement*, all that could be desired in qualification of this doctrine. It is here held, that when the demands of both parties spring out of the same contract or transaction, the defendant may *recoupe*, although the damages on both sides are unliquidated; but he can only set

Hand v. Fielding.

off when the demands of both parties are liquidated, or capable of being ascertained by calculation.

It was formerly supposed that there could only be *recoupement* where some fraud was imputable to the plaintiff, in relation to the contract on which the action was founded; but it is now well settled, that the doctrine is also applicable when the defendant imputes no fraud, and only complains that there has been a breach of the contract on the part of the plaintiff.

For the purpose of avoiding circuity, or the multiplication of actions, and doing complete justice to both parties, they are allowed (and compelled, if the defendant so elect,) to adjust all their claims growing out of the same contract in one action. It is no objection to the defence that the plaintiff is not suing upon the original contract of sale, but upon a note given for the purchase-money.

The promise of the defendant to pay the purchase-money, has undergone the slight modification of being put into the form of a written obligation, and on that the action is founded; but still the plaintiff is, in effect, seeking to enforce the original contract, and the question must be settled in the same manner as though the action was in form upon the contract.

The same judge, who pronounced this opinion, remarked, in reply to some cases cited in opposition, "The truth is, that the doctrine, although founded in the plainest principle of justice, is not of very long standing; and while it was in a forming state, it may very well have happened that the rule should be sometimes overlooked, both by court and counsel. But the principle is now too firmly settled to be shaken by a few straggling cases or the occasional *dicta* which seem to look in the opposite direction. *Batterman* v. *Pierce*, 3 Hill. 172. There may still remain a class of cases to which the old rule may fully apply. It is certainly not directly overruled. Nor is the principle, on which it rests, impugned. The right to deduct is, in the language of the annotator above cited, extended. *Spalding* v. *Vandercook*, 2 Wend. 432; *Burton* v. *Stewart*, 3 Wend. 238; *People* v. *Niagara*, 13 Wend. 246. It is, however, still confined to demands arising out of the same contract which gave rise to the note, but, with this qualification, has a most extensive application, embracing all claims proceeding from fraud, warranty, or breach of contract, generally. This, it must be remarked, is strictly in mitigation; no balance can be certified for defendant, nor, after having thus exhausted the plaintiff's demand, can he bring a suit for a balance or remainder. *Batterman* v. *Pierce*, 3 Hill. 174.

The doctrine of *recoupement* is generally treated and considered as a new doctrine. It is, indeed, new in its extended application to uncertain demands, but still it is a very ancient head of the law. Thus, (in 1 Dyer. 2, a. 7,) if a man disseise me of land, out of which a rent charge is issuant, which has

Hand v. Fielding.

been in arrear for several years, and the disseisor pay it, if the disseisee recover in an assize, the rent that the disseisor has paid shall be *recouped* in damages. It is defined, the keeping back or stopping something which is due, and in our law we use it for to defalk or discount; as if a person hath a rent of £10 out of certain lands, and he disseises the tenant of the land, in an assize brought by the disseisee, if he recover the land and damages, the disseisor shall *recoupe* the rent due in the damages. So of a rent charge issuing out of land, paid by the tenant to another, &c., he may *recoupe* the same. Terms de Ley.; Jacob Dic Ad. Voc. The extension, therefore, to uncertain damages, is the innovation of modern times.